RENDERED: JUNE 27, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0205-MR

BRETT KINCAID; KEVIN KINCAID,
INDIVIDUALLY AND ON BEHALF
OF HIS MINOR CHILD, CHANCE
KINCAID; DREW KINCAID,
INDIVIDUALLY AND ON BEHALF
OF HIS MINOR CHILD, RONAN
KINCAID; BROOKE KINCAID;
BRYCE KINCAID; AND CIERRA
KINCAID COLLINS, INDIVIDUALLY
AND ON BEHALF OF HER MINOR
CHILDREN, NOVALEI RAYA
COLLINS, SKYLA ARI COLLINS,
AND DAVINA REIGN COLLINS                                          APPELLANTS


                        APPEAL FROM FAYETTE CIRCUIT COURT
v.                      HONORABLE LUCY A. VANMETER, JUDGE
                        ACTION NO. 20-CI-02467


MICHAEL D. FOLEY, MEMBER OF
THE ADVISORY COMMITTEE OF
FUND C CREATED UNDER THE
TRUST AGREEMENT OF GARVICE
D. KINCAID, DECEASED, DATED
FEBRUARY 26, 1964, AS AMENDED;
AMELIE LARSON, MEMBER OF
THE ADVISORY COMMITTEE OF
FUND C CREATED UNDER THE
TRUST AGREEMENT OF GARVICE

D. KINCAID, DECEASED, DATED FEBRUARY 26, 1964, AS AMENDED; BARTON T. ROGERS, MEMBER OF THE ADVISORY COMMITTEE OF FUND C CREATED UNDER THE TRUST AGREEMENT OF GARVICE D. KINCAID, DECEASED, DATED FEBRUARY 26, 1964, AS AMENDED; LISA S. GRANT, MEMBER OF THE ADVISORY COMMITTEE OF FUND C CREATED UNDER THE TRUST AGREEMENT OF GARVICE D. KINCAID, DECEASED, DATED FEBRUARY 26, 1964, AS AMENDED; CENTRAL BANK & TRUST COMPANY, AS TRUSTEE OF FUND C CREATED UNDER THE TRUST AGREEMENT OF GARVICE D. KINCAID, DECEASED, DATED FEBRUARY 26, 1964, AS AMENDED; AND UNBORN BENEFICIARIES OF FUND C CREATED UNDER THE TRUST AGREEMENT OF GARVICE D. KINCAID, DECEASED, DATED FEBRUARY 26, 1964, AS AMENDED                    APPELLEES

<u>OPINION</u>
<u>REVERSING</u>

** ** ** ** **

BEFORE:  CETRULO, LAMBERT, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Brett Kincaid; Kevin Kincaid, individually and on behalf of his minor child, Chance Kincaid; Drew Kincaid, individually and on behalf of his minor child, Ronan Kincaid; Brooke Kincaid; Bryce Kincaid; and Cierra Kincaid

-2-

Collins, individually and on behalf of her minor children, Novalei Raya Collins, Skyla Ari Collins, and Davina Reign Collins; appellants, bring this appeal from a January 18, 2024, Final Judgment of the Fayette Circuit Court, holding that the Advisory Committee of Fund C could direct the Trustee, Central Bank & Trust Company, to sell over the term of four years 80 percent of Central Bancshares stock held in trust by Fund C. For the reasons stated, we reverse.

The controversy between the parties centers upon whether shares of Central Bancshares stock held in trust by Fund C may be sold by the Trustee, Central Bank & Trust Company, upon the direction of the Advisory Committee to Fund C even though such sale was unanimously opposed by Eligible Beneficiaries of Fund C.[1] Upon consideration of the Trust Agreement, amendment thereto, and Kentucky law, we are of the opinion that the direction of the Eligible Beneficiaries was binding and that the circuit court erred by concluding that the Trustee could sell 80 percent of Central Bancshares stock over a four-year period.

## **FACTS**

The facts underlying this case are both voluminous and complicated; consequently, we will recite only those facts relevant to this appeal. The trust at issue was established by Garvice Kincaid through execution of a Trust Agreement

---

[1] Eligible Beneficiaries are the adult beneficiaries of Fund C other than Jane Kincaid, Joan Kincaid, or the Kincaid Foundation, Inc. Paragraph 10 of the 2007 Settlement Agreement.

in 1964; it created three separate funds – Fund A, Fund B, and Fund C. Under the terms of the Trust Agreement, an Advisory Committee was also created to instruct the Trustee, Central Bank & Trust Company, as to management of the trust and distribution of trust assets. Of particular import herein, the trust held the controlling interest in Central Bank & Trust Company (Central Bank) in the form of Central Bancshares Inc. stock.[2] Upon the passing of Garvice's wife, the beneficiaries of Fund A and Fund B were Garvice's two daughters, Joan and Jane, and the beneficiaries of Fund C were Joan, Jane, and Jane's children, Brett Kincaid and Kevin Kincaid.

In 2007, the Advisory Committee, which included Joan and Jane, proposed a transfer of assets from Fund C to Fund A and to Fund B and also sought court approval to do so; however, Brett and Kevin opposed the transfer of assets. Eventually, the parties entered into a 2007 Settlement Agreement. Under the 2007 Settlement Agreement, 124,967 shares of Central Bancshares stock were transferred from Fund C to Fund A and to Fund B, while Fund C retained 50,000 shares of Central Bancshares stock. Upon this transfer of the Central Bancshares stock to Fund A and Fund B, Joan and Jane obtained the majority interest in Central Bank. The 2007 Settlement Agreement also provided that shares of Central Bancshares stock remaining in Fund C could not be sold by the Advisory

---

[2] Central Bancshares Inc. is the parent company of Central Bank & Trust Company.

Committee or the Trustee if the Eligible Beneficiaries of Fund C unanimously objected to such sale and gave written direction to not sell the shares. However, such direction by the Eligible Beneficiaries could not be "inconsistent with sound and prudent business judgment." 2007 Settlement Agreement at 8. As noted, Eligible Beneficiaries were defined as adult beneficiaries of Fund C with the exception of Joan, Jane, and the Kincaid Foundation. Additionally, the 2007 Settlement Agreement provided that if Jane, Joan, or the Kincaid Foundation sold the majority interest in Central Bancshares stock, the Central Bancshares stock held by Fund C must also be sold at the same price (referred to as tag-along rights).

In 2012, 2014, and 2019, the Advisory Committee recommended shares of Central Bancshares stock be sold in order to diversify the assets of Fund C and to generate more income with the purchase of higher dividend stocks. In 2019, the Advisory Committee specifically sought approval to sell 80 percent of Central Bancshares stock over a four-year period. The Eligible Beneficiaries unanimously directed that the stock not be sold as proposed by the Advisory Committee.

Eventually, on August 18, 2020, the Advisory Committee[3] and the Trustee filed a petition in the Fayette Circuit Court under Kentucky Revised

---

[3] At the time of filing the petition, Joan Kincaid was no longer a member of the Advisory Committee but was vice-chairperson of the Central Bank & Trust Company's board of directors. Jane Kincaid had passed away.

Statutes (KRS) 386B.2-010, "seeking advice and instructions from this Court as to whether the Advisory Committee may properly instruct and direct Central Bank, as Trustee, to sell a portion of the shares of Central Bancshares, Inc., stock currently held by Fund C . . . ." Petition at 2. In particular, it was alleged:

20. The Kincaid Trust provides for the creation of a marital share (Funds A and B) and a non-marital share (Fund C). Funds A and B have terminated, and their assets have been distributed to the beneficiaries. Fund C remains under administration and will only terminate 21 years after the death of the last survivor of nine named persons, of whom only Joan D. Kincaid and Brett are currently living. At termination, Fund C is to be distributed to Mr. Kincaid's issue then living, *per stirpes*, or if none, then to the Kincaid Foundation. At present, Joan D. Kincaid, who is the only living child of Mr. Kincaid; Brett and Kevin, who are the only children of Jane W. Kincaid (Mr. Kincaid's deceased daughter); and Cierra, Brooke, Bryce and Chance, who are the only biological children of Kevin Kincaid, and Cierra's daughter, Novalei Raya Collins, are currently eligible to receive distributions from Fund C of the Kincaid Trust. In addition, Drew Kincaid, the recently adopted adult stepson of Kevin, has been adjudicated as a Trust beneficiary by the Court in Fayette Circuit Court Case No. 19-CI-02278, Division 3; thus Drew and potentially his son, Ronan, are also eligible beneficiaries.

21. At the time of the final allocation of the assets of the Kincaid Trust between Funds A, B and C, 50,000 shares of Central Bancshares stock were allocated to Fund C, a minority share constituting approximately 14% of the outstanding stock of the Central Bank's holding company. As part of the December 17, 2007 Settlement Agreement which led to that final allocation, the Advisory Committee, Central Bank and the adult beneficiaries of the Kincaid Trust all agreed that, as the

sole limitation on the sole and unfettered discretion afforded to the Advisory Committee to direct the purchase, sale and investment of Trust assets, the Advisory Committee and Central Bank would honor the unanimous written direction of each of the adult beneficiaries of Trust Fund C (other than Joan Kincaid or the Kincaid Foundation, Inc.) with regard to selling or retaining the Central Bancshares stock in Fund C, assuming that that direction is not "inconsistent with sound and prudent business judgment." The need for sound and prudent business judgment to drive the investment of Fund C assets, even if the present adult beneficiaries prefer a different path, is necessary because Fund C is likely to last for another 50 or so years and there are likely to be numerous additional heretofore unborn beneficiaries of Fund C, not to mention the current minor beneficiaries of Fund C, who will be impacted by an imprudent investment decision with regard to the Central Bancshares stock directed by the current adult beneficiaries.

22. Since 2007, the adult beneficiaries other than Joan Kincaid and the Kincaid Foundation, have indicated their strong opposition to any sale of any Central Bancshares stock. On April 16, 2014, in response to a proposal by the Advisory Committee and the Trustee to undertake to diversify Fund C's investment portfolio by selling a portion of stock in Central Bancshares over time, the then sole adult beneficiaries of Fund C (other than Joan Kincaid and the Kincaid Foundation), wrote a letter directing the Advisory Committee to retain all of Fund C's Central Bancshares stock. Since that time, the concentration of Trust assets in Central Bancshares stock had continued to grow, up to approximately 70% of the overall Trust portfolio through to the time of the recent global health and economic crisis.

23. Other events have transpired with the Trust which make diversification all the more necessary. For example, over the past several years the cash needs of the

-7-

Trust have substantially increased as the number of and needs of the beneficiaries of the Trust have increased. Brooke and Bryce have attained majority, and Chance is approaching majority. Kevin has adopted Drew, who has a son, Ronan, and Drew has been adjudicated as an additional Trust beneficiary. Cierra has recently given birth to a new daughter, Novalei, and over the past year she has needed increasing distributions from the Trust. Yet the stock in Central Bancshares is a relatively illiquid and low-yielding asset, currently yielding approximately .5% per year compared to the current yields for the balance of the Trust assets (approximately 1.9% per year) in a high-growth portfolio.

24. Central Bank's Trust Department guidelines stipulate that no individual equity or fixed income holding representing 15% or more of the value of the account should be held. While the unique circumstances of the Kincaid Trust have prevented Central Bank from adhering to this standard, including, historically, the high concentration of Central Bank stock that Mr. Kincaid held at his death and, more recently, the beneficiaries' staunch refusal to permit any sale of the stock, the increasingly high concentration of Fund C's overall assets in Central Bancshares stock (70%), together with the fact that this stock does not yield sufficient income to meet the Trust's continuing income needs, make it imprudent, in the Advisory Committee's and the Trustee's view, for Fund C to continue to hold such a high concentration of the Central Bancshares stock.

25. In light of the foregoing, on December 2, 2019, the Advisory Committee sent a proposal to the current adult beneficiaries of Fund C (other than Joan Kincaid and the Kincaid Foundation), that is, Kevin, Brett, Cierra, Brooke and Bryce, proposing a plan whereby the Trustee would make available for sale up to 20% of the Trust's current holdings in Central Bancshares stock each year over the next 4 years, with the further plan to ultimately retain a position in that

stock equal to approximately 10-15% of the value of the overall Trust portfolio. The proposal was supported by an analysis undertaken by Mercer Capital, a leading national business valuation and financial advisory firm with substantial familiarity with Central Bank's stock. A true and correct copy of the December 2, 2019[,] proposal together with the Mercer Capital Analysis submitted along with that proposal is attached hereto as Exhibit 2.

26. Shortly after receiving this proposal from the Advisory Committee, the adult beneficiaries responded with a letter which provided, in addition to other extraneous matters, unanimous written direction to the Advisory Committee and the Trustee by all of the adult beneficiaries of Fund C that Fund C retain all of its Central Bancshares stock and that none of that stock may be sold. That letter is attached as Exhibit 3.

27. In the view of the Advisory Committee and the Trustee, the recent and ongoing global health crisis and the resulting economic downturn that occurred after the Advisory Committee made its proposal, has made it even more critical that the assets of Trust Fund C not remain so highly concentrated in one asset. A post-pandemic update prepared by Mercer Capital, Exhibit 4, reflects that between October 14, 2019 (the valuation date of the Mercer Capital Analysis submitted to the beneficiaries on December 2, 2019) and June 16, 2020 (the updated valuation date), the value of the Central Bancshares stock has dropped by approximately 11.6%. This compares with the increase, over this same period, in the diversified portion of the Fund C portfolio, excluding the Central Bancshares stock, of approximately 4.76%.

28. As a result of the foregoing, a substantial and present dispute exists between the Advisory Committee and Central Bank, on the one hand, and the current adult beneficiaries of Fund C, on the other hand, as to whether

the present high concentration of Central Bancshares stock should be maintained in Fund C's portfolio.

29. Moreover, as a result of the foregoing, and as a result of the provision of the parties' December 17, 2007 Settlement Agreement that requires the Advisory Committee and the Trustee to honor the unanimous written direction of the adult beneficiaries of Fund C to retain the Central Bancshares stock, **but only to the extent the beneficiaries' direction is not inconsistent with sound and prudent business judgment**, reasonable doubt exists as to the extent of the Advisory Committee's powers and/or duties to direct the sale of a portion of the Central Bancshares stock—and of Central Bank's powers and duties to sell that stock.

30. As a result, and pursuant to KRS 386B.2-010, this Court should grant its advice and instructions to the Advisory Committee, declaring whether or not the Advisory Committee may direct and instruct Central Bank to sell a portion of the Central Bancshares stock held by Fund C—and whether or not Central Bank may sell that stock—and, if so, stipulating the specific conditions, *e.g.*, timing, floor price, etc., governing such sale(s).

Petition at 5-10.

The named respondents were the Eligible Beneficiaries and their children of Fund C. The Eligible Beneficiaries and their children filed answers and counterclaims. In the counterclaims, it was alleged that the Advisory Committee and Central Bank breached their fiduciary duties to the beneficiaries by attempting to sell Central Bancshares stock. Specifically, it was asserted that "[t]hese Respondents believe that the Petitioners' filing of the Petition and attempt to sell

-10-

Central Bancshares stock despite the adult beneficiaries' written direction that all Central Bancshares stock is to be retained in Fund C is a bad faith attempt to minimize and/or disenfranchise the trust's (and indirectly the beneficiaries') standing as a shareholder and future benefit from any sale of the bank." September 2, 2020, Response and Counterclaim at 6.

Thereafter, on October 16, 2020, the Advisory Committee and Central Bank jointly filed a motion to limit the Eligible Beneficiaries' right to restrict the sale of the bank stock.[4] In said motion, they argued that "sound and prudent business judgment limits the adult beneficiaries' right to preclude Petitioners from selling any of Fund C's Central Bancshares stock" as provided by the 2007 Settlement Agreement. Record at 359. The Advisory Committee and Central Bank maintained that the Eligible Beneficiaries' unanimous directive not to sell the Central Bancshares stock was not consistent with sound and prudent business judgment. The Advisory Committee and Central Bank asserted that the Eligible Beneficiaries' position was in violation of the plain language of the 2007 Settlement Agreement, which provided that "[t]he Eligible Beneficiaries will not propose any directions hereunder that would be inconsistent with sound and prudent business judgment." Record at 361. The Advisory Committee and Central

---

[4] The motion was styled "Motion for Declaration That Sound and Prudent Business Judgment Limits the Adult Beneficiaries' Right to Preclude Petitioners from Selling Stock."

Bank pointed out that unborn beneficiaries to Fund C must be also considered as Fund C was expected to last for "generations into the future." Motion for Declaration at 4.

Also in October of 2020, the Eligible Beneficiaries and their children filed a motion to dismiss the petition. They argued that no justiciable controversy existed as the Advisory Committee and Central Bank were relieved of liability for following the unanimous directive of Eligible Beneficiaries not to sell Central Bancshares stock per the Trust Agreement and the 2007 Settlement Agreement. If a justiciable controversy were present, the Eligible Beneficiaries maintained that the sale of Central Bancshares stock was contrary to the intent of the settlor and of the expressed directive of the Eligible Beneficiaries per the 2007 Settlement Agreement. Moreover, the Eligible Beneficiaries also alleged that their direction not to sell 80 percent of Central Bancshares stock over four years was sound and prudent business judgment.

In an opinion and order entered November 25, 2020, the circuit court denied the Motion to Dismiss and granted the Motion for Declaration that Sound and Prudent Business Judgment Limits the Adult Beneficiaries' Right to Preclude Petitioners from Selling Stock. The court determined that a justiciable controversy was presented as the parties disputed the proper interpretation of the 2007 Settlement Agreement and that the petition was properly filed pursuant to KRS

386B.2-010.  The circuit court also concluded that the 2007 Settlement Agreement was unambiguous and that the "Petitioners are bound to abide by the unanimous written direction of the Eligible Beneficiaries unless the direction 'would be inconsistent with sound and prudent business judgment.'"  November 25, 2020, Opinion and Order at 7.  The circuit court then stated that it would "conduct further proceedings regarding whether the unanimous written direction of the Eligible Beneficiaries is 'inconsistent with sound and prudent business judgment.'"  November 25, 2020, Opinion and Order at 8.  Subsequently, on January 19, 2021, the circuit court rendered an opinion and order holding that the action would be tried by the court without a jury as the action was in equity.

Thereafter, Cierra, Bryce, and Brook filed a motion to add Joan Kincaid as an indispensable party under Kentucky Rules of Civil Procedure (CR) 19.01.  They pointed out that Joan was a beneficiary of Fund C, controlled Central Bank as the majority shareholder, was Vice-Chairperson of Central Bank's board of directors, and was a party to the 2007 Settlement Agreement.  Moreover, they asserted that Joan possessed "certain duties and obligations that are implicated in this action, not the least of which is her duty to act in good faith, and also ensure that the Respondents are afforded the full benefit of the 2007 Settlement Agreement – including the benefit of certain 'tag-along' rights prescribed under the Agreement."  Joint Motion to Add Indispensable Party Under CR 19.01 at 2.

-13-

Cierra, Bryce, and Brook also filed a motion for leave to file an amended response, counterclaims, and third-party complaint against, *inter alios*, Joan. In short, Cierra, Bryce, and Brook alleged that the recommendation to sell Central Bancshares stock by the Advisory Committee was at the behest of Joan[5] in an effort to defeat the tag-along rights conferred to Fund C in the 2007 Settlement Agreement. In so doing, they claimed that the Advisory Committee, Central Bank, and Joan breached myriad fiduciary duties owed to the beneficiaries of Fund C.

In a response filed by the Advisory Committee and Central Bank, they argued that Joan was not an indispensable party and that there were no grounds to file a third-party complaint against Joan. The Advisory Committee and Central Bank pointed out that Joan was no longer a member of the Advisory Committee, and while a beneficiary of Fund C, she was only entitled to distribution if a catastrophic change in her financial condition occurred. Moreover, under the 2007 Settlement Agreement, she was not an Eligible Beneficiary entitled to direct the Advisory Committee to sell or hold the Central Bancshares Stock. The Advisory Committee and Central Bank claimed that Joan's absence did not prevent the court from granting complete relief to the parties. The Advisory Committee and Central Bank also attached a Ratification and Waiver signed by Joan. In the Ratification and Waiver, Joan "waive[d] any claims that I might have with respect to the

---

[5] Joan was 81 years old in January 2023.

December 2, 2019[,] proposal for the sale of Fund's C's Central Bancshares stock by Petitioners in the action" "or the December 14, 2019[,] direction of the Respondents in the [a]ction that [the] proposed sale not occur[.]" Ratification and Waiver at 1. Additionally, Joan agreed to be bound by the judgment or the result reached in the action.

By order entered April 16, 2021, the circuit court denied the motion to add Joan as an indispensable party in view of the Ratification and Waiver signed by Joan. The circuit court also denied Cierra, Bryce, and Brook's motion to add counterclaims and file a third-party complaint against, *inter alios*, Joan. The circuit court determined that in the counterclaims and third-party complaint, Cierra, Bryce, and Brook simply disliked the fact that the Advisory Committee and Central Bank filed the petition for instruction as to the sale of Central Bancshares stock. The circuit court believed that many of the claims set forth in the counterclaims and third-party complaint were "futile" and that the claims "did not fit" into the action.

Subsequently, Brett, Kevin, individually and as next friend of Chance, and Drew, individually and as next friend of Ronan, filed a motion for an order stating the issue to be tried and for an order that petitioners carried the burden of proof. In the motion, it was argued that "[t]he only issue to be tried, therefore, is whether Petitioners are bound to abide by the unanimous written direction of

Respondents to retain all shares of Central Bancshares, Inc.[,] in Fund C because that direction is not inconsistent with sound and prudent business judgment." Motion at 7. Moreover, they maintained that the burden of proof should be carried by the Advisory Committee and the Trustee. In response, the Advisory Committee argued that the burden of proof properly rested upon the Eligible Beneficiaries.

In a January 31, 2022, order, the circuit court determined that the burden of proof should be placed upon the Advisory Committee and Central Bank, as petitioners seeking instruction under KRS 386B.2-010. Additionally, the court believed that "[c]onsideration of the 'sound' and 'prudent' language in the [2007] settlement agreement implicates the higher standard of the prudent investor as codified in KRS 286.3-277[.]" January 31, 2022, Order at 4. In particular, the court concluded:

> Although the parties did not expressly agree to apply the prudent investor standard as the *sole* measure of the decision of the Eligible Beneficiaries, the prudent investor standard is a relevant consideration given its enduring recognition in Kentucky, its applicability to the fiduciary duties of the parties and the investment directions before the Court, and the parties' express agreement to hold the Eligible Beneficiaries to the standard of "sound and prudent business judgment."

January 31, 2022, Order at 5.

The court ultimately conducted a trial without a jury pursuant to CR 52.01 beginning on February 7, 2022.[6] On June 7, 2023, the circuit court rendered Findings of Fact and Conclusions of Law, concluding that the "current asset allocation is not producing sufficient income to meet the demands of the beneficiaries, requiring Petitioners to invade the marketable securities. . . . All parties seem to acknowledge some portion of Central Bancshares may need to be sold in the future, but the dispute centers on when that sale should occur, and under what circumstances, given a number of variables including the risk of the current allocation, the increasing demands on Fund C, the 'run out of cash' horizon, the tax consequences of a sale or merger, the likelihood of increased dividends, the likelihood of a sale or merger of Central Bank, the uncertain market for Central Bancshares . . . ." Findings of Fact and Conclusions of Law at 6. The court recognized that the "evidence supports the notion that Central Bank is a 'really good stock'" and that "[t]he value of the shares has outpaced the marketable security investments of Fund C." Findings of Fact and Conclusions of Law at 8-9. Nonetheless, the circuit court believed that the risk of non-diversification outweighed any competing benefit of holding the Central Bancshares stock, which included an increase in dividends or sale/merger of Central Bank. The court noted

---

[6] The trial was conducted in two phases with the first phase being concluded in March of 2023. The second phase then commenced after mediation and a tentative settlement fell through.

that actuarial life of Fund C was 40 years and that Fund C does not possess sufficient assets to meet its obligations for 40 years. In particular, the court stated:

> [A] sale of Central Bancshares during the next ten years, *i.e.*, Joan's actuarial life, is not probable. Given the inevitable changes in leadership likely to occur in the next 10 to 20 years, a sale or merger is possible, although not necessarily probable. The more certain future event is that the marketable securities will continue to diminish to the point where a sale of Central Bancshares is required to meet the demands of the beneficiaries. Whether that occurs in six years or 21 years, Fund C will probably become illiquid before the actuarial 40-year life expectancy of the Trust terminates. When a sale of Central Bancshares is compelled by such a happening, the proceeds will be subject to capital gains taxes with a much shorter horizon in which to recoup those tax losses."

Findings of Fact and Conclusions of Law at 21-22.

Also, the court questioned whether a potential buyer could be secured to purchase the Central Bancshares stock from Fund C in the event of an acute need. The court ultimately concluded that the Eligible Beneficiaries' direction not to sell Central Bancshares stock was inconsistent with sound and prudent business judgment. The court further concluded that 80 percent of Central Bancshares stock should be sold over the next four years. The court deferred a decision on the specific conditions of the sale for later adjudication.

On January 18, 2024, the court rendered a Final Judgment. Therein, the court held that 20 percent of Central Bancshares stock would be sold every

-18-

twelve months for the next four years; thus, at the end of four years, a total of 80 percent of Central Bancshares stock held by Fund C would have been sold. This appeal followed.

## STANDARD OF REVIEW

This case was tried by the court without a jury pursuant to CR 52.01. Under CR 52.01, the circuit court's findings of fact will not be disturbed unless clearly erroneous. A finding of fact is clearly erroneous if not supported by substantial evidence of a probative value. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). We review issues of law *de novo*. *J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 158 (Ky. App. 2024). Additionally, as concerns the construction and interpretation of a contract, including any ambiguity therein, our review is also *de novo*, without deference to any legal conclusions reached by the trial court. *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010).

## SOUND AND PRUDENT BUSINESS JUDGMENT

Appellants contend that the circuit court erred by concluding that the Eligible Beneficiaries' direction not to sell 80 percent of Central Bancshares stock over four years was inconsistent with sound and prudent business judgment as set forth in the 2007 Settlement Agreement. For the reasons hereinafter set forth, we agree.

Under the Kentucky Uniform Trust Code (Code), the trustee must administer the trust exclusively in the interest of the beneficiaries, and the trustee is bound to administer the trust in good faith in accordance with the trust's terms and purposes. KRS 386B.8-010; KRS 386B.8-020. In particular, the trustee is required to act as "a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust" [and] "shall exercise reasonable care, skill, and caution." KRS 386B.8-040. Under the Code, the trustee must act as a "prudent investor." KRS 386B.9-010. Under this prudent investment standard, there is authority that a trustee must prudently manage the risk associated with the trust assets, and to that end, the trustee has a general duty to diversify the assets of the trusts. *Restatement* (*Third*) *of Trusts* § 90 General Standard of Prudent Investment (2007); *see also City of Fort Wright v. Board of Trustees of Kentucky Retirement Systems*, 635 S.W.3d 37, 40 n.5 (Ky. 2021). As concerns a bank acting as a fiduciary or trust company, Kentucky law also states the bank has a duty to diversify investments "unless, . . . it is prudent not to do so." KRS 286.3-277(3). However, when considering the powers and duties of a trustee, the trust agreement controls to the extent it is not inconsistent with the specific provisions set out in KRS 386B.1-030(2). *Estate of Worrall by Worrall v. J.P. Morgan Bank, N.A., Trustee of James P. Thompson Trust*, 645 S.W.3d 441, 449 (Ky. 2022). Thus, the trust agreement is paramount as to the powers and duties of

a trustee, unless a limited statutory exception applies, which includes the duty of the trustee to act in good faith and to act in the interest of the beneficiaries. KRS 386B.1-030(2).

A trust agreement is a type of contract, and the court utilizes rules of interpretation and construction that apply to disposition of property by will to discern its meaning and effect. KRS 386B.1-100; *Todd v. Hilliard Lyons Trust Company, LLC As Trustee Under Will of Todd*, 633 S.W.3d 342, 345 (Ky. App. 2021). In this regard, the testator's intent is controlling and is considered the "polar star." *Todd*, 633 S.W.3d at 345 (quoting *Benjamin v. JP Morgan Chase Bank, N.A.*, 305 S.W.3d 446, 451 (Ky. App. 2010)). As with other contracts, if the terms of the instrument are clear, our inquiry ends. *Benjamin*, 305 S.W.3d at 451; *Mostert v. Mostert Group, LLC*, 606 S.W.3d 87, 91 (Ky. 2020). To that end, it is generally assumed that words are used in their ordinary and usual meaning unless the words utilized have acquired a recognized technical or legal meaning. *Combs v. Napier*, 706 S.W.3d 161, 165 (Ky. 2024); *see also* 2 Norvie L. Lay and James R. Merritt, *Kentucky Probate Practice and Procedure* § 1113 (2023); 2 Norvie L. Lay and James R. Merritt, *Kentucky Probate Practice and Procedure* § 1112 (2023). Moreover, the instrument must be viewed as a whole to discern intent. *Todd*, 633 S.W.3d at 345. The determination of whether an instrument is ambiguous presents an issue of law, and our review thereon is *de novo*. *Benjamin*, 305 S.W.3d at 451.

In this case, the Trust Agreement was consummated on February 26, 1964, and from the beginning, the Trust Agreement recognized that the trust would be comprised of assets that are not necessarily diverse:

> (4) The Trustee, in excising the powers hereinbefore and hereinafter conferred upon it and the power conferred upon it by law, shall at all times act in accordance with instructions and directions given it by the Grantor or the Advisory Committee. Subject always to this condition and requirement, the Trustee shall have full power and authority:
>
> . . . .
>
> (c) **To hold and retain any of the property coming into its hands** hereunder in the same form of investments as that in which it shall have been received, without liability for loss or depreciation resulting from such retention, although it may not be the character of investments permitted by law to trustees and **although it represents a large percentage of the total property of the trust estate.**

Trust Agreement at 17-18 (emphasis added).

Subsequently in 2007, the parties executed the instrument at the heart of this case – the 2007 Settlement Agreement.[7] The 2007 Settlement Agreement marked a pivotal juncture for Fund C. The Advisory Committee, with Joan and Jane as members, filed an action to transfer assets from Fund C to Fund A and

---

[7] Consistent with the parties and circuit court, we view the 2007 Settlement Agreement as an amendment to the Trust Agreement.

Fund B due to the failure of Kentucky Central Life Insurance Company that negatively impacted the financial condition of Fund A and Fund B. In the end, the parties reached the 2007 Settlement Agreement, which amended the Trust Agreement. Under the terms of the 2007 Settlement Agreement, 124,967 shares of Central Bancshares stock were transferred from Fund C to Fund A and to Fund B, while Fund C retained 50,000 shares of Central Bancshares stock.[8] With this transfer, Central Bancshares stock still comprised the majority of assets of Fund C, but the control of Central Bank was transferred to Joan and Jane, as they obtained the majority of Central Bancshares stock (Jane has since passed away) previously held by Fund C. In return, Fund C obtained "tag-along rights" in the event Joan or Jane sold their controlling Central Bancshares stock. Paragraph 9 of the 2007 Settlement Agreement set forth the tag-along rights and reads:

> 9. If Jane Kincaid or Joan Kincaid, or their estates, The Kincaid Foundation, Inc., or any other person or entity, or any combination thereof, sells a controlling interest, whether for cash or other consideration, in the shares of Central Bancshares, Inc., the Fund C shares must also be sold at the control interest price or consideration and Brett Kincaid and Kevin Kincaid will not oppose such sale.

2007 Settlement Agreement at 7. The 2007 Settlement Agreement also contained a provision requiring the approval of the Eligible Beneficiaries before a sale of

---

[8] In the 2007 Settlement Agreement, Fund C was additionally given other assets with a value of approximately $20,000,000.

Central Bancshares stock held by Fund C could occur. This provision was set forth in Paragraph 10 and provided:

> 10. As a sole limit on the discretion of the Advisory Committee and Trustee over decisions with regard to the Central Bancshares, Inc. stock in Fund C, the parties agree as follows: In the event that the Trustee is presented written direction to sell any or all of the Central Bancshares, Inc. stock in Fund C, including directions as to floor price for such sale, signed by every adult beneficiary of Fund C (other than Jane Kincaid, Joan Kincaid or The Kincaid Foundation, Inc.) (collectively "the Eligible Beneficiaries") then the Advisory Committee and the Trustee will honor such direction. Similarly, in the event the Trustee is given written direction to retain any or all of the Central Bancshares, Inc. stock in Fund C (or not to sell below any floor price), signed by every one of the Eligible Beneficiaries, which direction must be joined in by every additional beneficiary within 30 days of attaining majority, the Trustee and the Advisory Committee will honor such direction. The Eligible Beneficiaries will not propose any directions hereunder that would be inconsistent with sound and prudent business judgment. In the event that the Trustee and the Advisory Committee honor such direction by the Eligible Beneficiaries to either sell or retain the Central Bancshares, Inc. stock, the Eligible Beneficiaries waive any and all rights to file any action or complaint against the Trustee and the Advisory Committee, and the Trustee and Advisory Committee shall be released, exonerated and held harmless from any and all claims of the Eligible Beneficiaries and all minor and unborn beneficiaries of Fund C related to any action or inaction taken by the Trustee or the Advisory Committee by reason of honoring the directions of the Eligible Beneficiaries.

2007 Settlement Agreement at 7-8.

Pursuant to Paragraph 10, the Advisory Committee must follow the direction of the Eligible Beneficiaries as to selling Central Bancshares stock provided that such direction was not "inconsistent with sound and prudent business judgment." 2007 Settlement Agreement at 7-8. As is evident, the parties disagree as to the meaning of the operative terms "sound and prudent business judgment" found in Paragraph 10. 2007 Settlement Agreement at 7-8.

The Advisory Committee and Trustee believe that the requirement of "sound and prudent business judgment" in Paragraph 10 invokes the prudent investor standard. So, the Advisory Committee and the Trustee argue that the Eligible Beneficiaries' direction must be measured by the prudent investor standard. However, if such were truly intended, Paragraph 10 would have simply read that the Eligible Beneficiaries' recommendation must not be inconsistent with a prudent investor or a prudent trustee. Yet, Paragraph 10 was not so drafted. Instead, Paragraph 10 required the Eligible Beneficiaries' direction to be not inconsistent with "sound and prudent business judgment." Considering the particular language of Paragraph 10, the parties obviously did not intend to invoke the prudent investor standard therein.

Rather, we believe the terms in Paragraph 10 should be simply given their ordinary and usual meaning. *See Combs*, 706 S.W.3d at 165. In so doing, the term "sound" ordinarily means "having a firm basis" or "based on valid reasoning:

-25-

sensible." Webster's II New Riverside University Dictionary 1110-1111 (1994). The term "prudent" ordinarily means "using good judgment and common sense" or "careful." Webster's II New Riverside University Dictionary 948 (1994). The term "business" in this context ordinarily means "[c]ommercial, industrial, or professional dealings." Webster's II New Riverside University Dictionary 212 (1994). And the term "judgment" ordinary means "[t]he ability to make a decision or form an opinion by discerning or evaluating." Webster's II New Riverside University Dictionary 657 (1994). Taken together, the requirement of sound and prudent business judgment in Paragraph 10 simply means that the direction of the Eligible Beneficiaries must be based upon valid reasoning that results in a discerning and a carefully considered decision as to the Central Bancshares held by Fund C. *See id.* And such ordinary and usual meaning is consistent with and furthers the intent behind Paragraph 10 and the Trust Agreement. *See Todd*, 633 S.W.3d at 345. At the time of the 2007 Settlement Agreement, Central Bancshares stock was the predominate asset of Fund C. Paragraph 10 was intended as a mechanism to prevent the sale of Central Bancshares stock without the consent of the Eligible Beneficiaries in an effort to protect Central Bancshares stock in Fund C and to protect the tag-along rights provided for in Paragraph 9. *See id.*

The Eligible Beneficiaries directed the Advisory Committee not to sell the Central Bancshares stock partly because they believed that Central Bank

could be sold or merged in the near future with another bank before or after the passing of the majority shareholder, Joan, who was 81 years old in 2023. In the event of the sale of Joan's majority Central Bancshares stock, Paragraph 9 of the 2007 Settlement Agreement would be triggered, and the Central Bancshares stock held by Fund C could be sold at the same price, which would likely be a higher price than the stock could be sold for currently. As hereinbefore stated, considering the whole of the 2007 Settlement Agreement, it appears that Paragraph 10 of the 2007 Settlement Agreement was included as a mechanism to prevent the sale of Central Bancshares stock without the consent of the Eligible Beneficiaries in an effort to protect their tag-along rights set forth in Paragraph 9.

The circuit court did consider the future sale of Central Bank. It found that Joan was the majority shareholder of Central Bancshares and had no plans of selling her Central Bancshares stock. The circuit court also found that a merger or sale of Central Bank in 10 years was not probable and that a sale in 10-20 years was possible although not probable. However, Joan was 81 years old in 2023, so it is undisputed that Central Bank will be, in the not-so-distant future, undergoing a change as to the majority shareholder. Additionally, the circuit court found that Central Bancshares stock was a good stock and that its share value had outperformed the market securities in Fund C. However, Fund C's income was insufficient to meet its distributions and liabilities in 2021, and the circuit court

acknowledged that Fund C could run out of funds in six to twenty-one years, but such date was very much uncertain.

In the final analysis, the circuit court's findings of fact support the conclusion that both the Advisory Committee's recommendation to sell 80 percent of Central Bancshares stock in four years and the Eligible Beneficiaries' direction to not sell the Central Bancshares stock under such terms were not inconsistent with sound and prudent business judgment as set forth in Paragraph 10. Considering the circuit court's findings of fact, the Eligible Beneficiaries' reasoning and basis for their direction to not sell the Central Bancshares stock was certainly the result of valid reasoning and sensible under the circumstances. In fact, it is conceivable that any number of scenarios concerning the sale or retention of Central Bancshares stock in Fund C would not be inconsistent with sound and prudent business judgment, including selling a lesser quantity of Central Bancshares stock or retaining the stock for a few years and then selling the stock under the facts as found by the circuit court. Based on our review of the record, we conclude that the circuit court erred by viewing Paragraph 10 of the 2007 Settlement Agreement too narrowly and by failing to recognize that both the Advisory Committee's recommendation and the Eligible Beneficiaries' direction as to Central Bancshares stock were not inconsistent with sound and prudent business judgment. However, under Paragraph 10, the Eligible Beneficiaries

position is controlling.  Accordingly, we reverse the circuit court's Final Judgment that the Trustee could sell 80 percent of Central Bancshares stock held by Fund C over a four-year period.

As to the remaining allegations of error, we view same as moot or without merit.  Without addressing all of these errors, we observe that appellants argue no justiciable issue was presented under KRS 386B.2-010; thus, the circuit court lacked jurisdiction.  This argument is meritless as the parties plainly disagree upon the right of the Eligible Beneficiaries to object to the proposed sale of the Central Bancshares under Paragraph 10 of the 2007 Settlement Agreement.  Additionally, appellants assert that the circuit court erred by failing to enforce a settlement agreement reached by the parties.  We disagree and believe that the "agreement" reached by the parties during the trial constituted merely an unenforceable agreement to agree per *Cinelli v. Ward*, 997 S.W.2d 474 (Ky. App. 1998).  And considering our resolution of the appeal in favor of appellants, their allegation that the circuit court erroneously denied the motion to file counterclaims and a third-party complaint against Jane is effectively rendered moot.

## SUMMARY

For the foregoing reasons, we reverse the Fayette Circuit Court's Final Judgment concluding that the Trustee could sell 80 percent of Central Bancshares stock held by Fund C over a four-year period.

ALL CONCUR.

BRIEFS FOR APPELLANTS BRETT KINCAID, KEVIN KINCAID, DREW KINCAID, BROOKE KINCAID, BRYCE KINCAID, AND CIERRA KINCAID COLLINS:

John S. Talbott III
Robert C. Stilz III
Lexington, Kentucky

Benjamin J. Lewis
A. Lauren R. Nichols
Louisville, Kentucky

ORAL ARGUMENT FOR APPELLANTS BRETT KINCAID, KEVIN KINCAID, DREW KINCAID, BROOKE KINCAID, BRYCE KINCAID, AND CIERRA KINCAID COLLINS:

Benjamin J. Lewis
Louisville, Kentucky

BRIEF FOR APPELLEES MEMBERS OF THE ADVISORY COMMITTEE FOR THE TRUST OF GARVICE D. KINCAID AND CENTRAL BANK & TRUST COMPANY, TRUSTEE:

Barry D. Hunter
Medrith Lee Norman
Jason P. Renzelmann
Lexington, Kentucky

Kevin G. Henry
Lexington, Kentucky

ORAL ARGUMENT FOR APPELLEES MEMBERS OF THE ADVISORY COMMITTEE FOR THE TRUST OF GARVICE D. KINCAID AND CENTRAL BANK & TRUST COMPANY, TRUSTEE:

Barry D. Hunter
Lexington, Kentucky